IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

UNITED STATES OF AMERICA,

*Appellee,*

v.

AARON J. THORPE,

*Appellant.*

On Appeal from the United States District Court
for the District of Columbia
No. 1:13-cr-00131-RJL-1, Hon. Richard J. Leon

**BRIEF FOR COURT-APPOINTED *AMICUS CURIAE*
IN SUPPORT OF THE ORDER BELOW**

SEAN MAROTTA
KEENAN H. ROARTY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
keenan.roarty@hoganlovells.com

September 4, 2024          *Court-Appointed* Amicus Curiae

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amicus curiae* certifies as follows:

## A.   Parties and *amicus curiae*.

The parties appearing in the District Court were Appellant Aaron J. Thorpe and Appellee the United States of America.  The parties appearing in this Court are the same, except that Keenan H. Roarty was appointed as *amicus curiae* to present arguments in support of the order below.

## B.   Rulings Under Review.

Thorpe appeals the District Court's decision denying the Government's motion to dismiss Thorpe's convictions under Federal Rule of Criminal Procedure Rule 48(a). The order of the District Court is available at *United States v. Thorpe*, No. 13-131-1 (RJL), 2023 WL 2139399 (D.D.C. Feb. 21, 2023) (Leon, J.) and is reproduced at pages 79-93 of Appellant's Appendix.

**C.     Related Cases.**

This is the fourth time this case has been before this Court. The first two appeals are found in *United States v. Knight*, 824 F.3d 1105 (D.C. Cir. 2016) (*Knight I*) and *United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020) (*Knight II*). The third appeal, *United States v. Thorpe*, No. 23-3055 (D.C. Cir. Dec. 7, 2023), dismissed Thorpe's appeal of his 28 U.S.C. § 2255 motion for lack of a certificate of appealability.

/s/ Keenan H. Roarty
Keenan H. Roarty

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ v

INTRODUCTION .................................................................................... 1

STATUTES AND REGULATIONS ......................................................... 2

ISSUES PRESENTED ............................................................................. 2

STATEMENT OF THE CASE .................................................................. 3

    A.    Thorpe's violent crime and convictions ..................................... 3

    B.    *Knight I* and *Knight II* ............................................................ 4

    C.    The Government brings a Rule 48(a) motion a year after the *Knight II* mandate issues, and the District Court denies it ......... 6

SUMMARY OF ARGUMENT ................................................................. 7

STANDARD OF REVIEW ...................................................................... 8

ARGUMENT ........................................................................................... 9

    I.    Rule 48(a) does not allow the Government to vacate convictions after appellate proceedings have finished ................ 9

    II.    The District Court did not abuse its discretion in concluding that releasing a dangerous individual was against the public interest .................................................................................... 20

        A. Rule 48(a)'s plain text and history gives courts broad discretion to decline to dismiss indictments when against the public interest ................................................ 21

        B. The District Court did not abuse its discretion in declining to release Thorpe, a dangerous recidivist ....................... 27

CONCLUSION ...................................................................................... 32

CERTIFICATE OF COMPLIANCE

**TABLE OF CONTENTS—Continued**

Page

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Arcadia, Ohio v. Ohio Power Co.*,
498 U.S. 73 (1990)............................................................16

*Argentine Republic v. Nat'l Grid Plc*,
637 F.3d 365 (D.C. Cir. 2011)............................................10

*Beardslee v. Brown*,
393 F.3d 899 (9th Cir. 2004) .............................................18

*Blackledge v. Allison*,
431 U.S. 63 (1977)............................................................31

*Bronsozian v. United States*,
No. 19-6220, 2020 WL 1906543 (U.S. Apr. 20, 2020)....................15

*Campos-Chaves v. Garland*,
144 S. Ct. 1637 (2024)........................................................9

*The Confiscation Cases*,
74 U.S. 454 (1868)............................................................12

*Eberhart v. United States*,
546 U.S. 12 (2005)............................................................19

*\*Hirabayashi v. United States*,
828 F.2d 591 (9th Cir. 1987) ............................12, 14, 15, 20

*Korematsu v. United States*,
584 F. Supp. 1406 (N.D. Cal. 1984)........................ 10-14, 19

*Maalouf v. Islamic Republic of Iran*,
923 F.3d 1095 (D.C. Cir. 2019)....................................16, 17

\* Authorities upon which we chiefly rely are marked with an asterisk.

v

# TABLE OF AUTHORITIES—Continued

Page(s)

*Muldrow v. City of St. Louis, Mo.*,
601 U.S. 346 (2024)............................................................26

*Newman v. United States*,
382 F.2d 479 (D.C. Cir. 1967)....................................10, 11

*Rice v. Rivera*,
617 F.3d 802 (4th Cir. 2010) ................9, 13, 15, 16, 26, 27

*Rinaldi v. United States*,
434 U.S. 22 (1977)........................ 8, 15, 20, 21, 23-25, 30

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006)............................................................17

*State v. Villar*,
180 A.3d 588 (Vt. 2017)................................................ 13-15

*Thompson v. Runnels*,
705 F.3d 1089 (9th Cir. 2013) ......................................17

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
508 U.S. 439 (1993)..........................................................16

*United States v. Alford*,
89 F.4th 943 (D.C. Cir. 2024)........................................28

*United States v. Ammidown*,
497 F.2d 615 (D.C. Cir. 1973)............................ 11, 17, 18, 20, 24, 32

*United States v. Brown*,
892 F.3d 385 (D.C. Cir. 2018)........................................30

*United States v. Burdeau*,
168 F.3d 352 (9th Cir. 1999) ............................13, 14, 19

*United States v. Colwell*,
304 F. App'x 885 (D.C. Cir. 2008)..................................29

Page(s)

*United States v. Cowan*,
  524 F.2d 504 (5th Cir. 1975) ......................................................... 21-24

*United States v. Fokker Servs. B.V.*,
  818 F.3d 733 (D.C. Cir. 2016) ..............................................11, 17, 26

*United States v. Knight*,
  824 F.3d 1105 (D.C. Cir. 2016) ...................................... 3-5, 19, 29, 31

*United States v. Knight*,
  981 F.3d 1095 (D.C. Cir. 2020) ........................................4, 5, 6, 18, 31

*United States v. Smith*,
  467 F.3d 785 (D.C. Cir. 2006) ......................................12, 13, 15, 16

*Young v. United States*,
  315 U.S. 257 (1942) ..............................................................16, 22

**CONSTITUTIONAL PROVISION:**

U.S. Const., art. II, § 2, cl. 1 .....................................................18

**STATUTES:**

18 U.S.C. § 3553 .....................................................................29

18 U.S.C. 3553(a)(2) ...............................................................31

18 U.S.C. § 3553(a)(6) ............................................................29

18 U.S.C. § 3582(c)(1)(A) ........................................................20, 30

28 U.S.C. § 2255 ...................................................................7, 19, 31

**RULES:**

*Fed. R. Civ. P. 48(a) ....................................... 1, 2, 6-10, 12-22, 24-27, 29-32

Fed. R. Crim. P. 48(a) (1994) ...................................................10

Page(s)

Fed. R. Crim. P. 48(a) advisory committee's notes to 1944 adoption...............12, 22

Fed. R. Crim. P. 48(a) advisory committee's notes to 2002 amendments .........................................................................................10

**OTHER AUTHORITIES:**

3B Wright & Miller, Fed. Prac. & Proc. Crim. § 802 (4th ed. June 2024 update)........................................................................................13

Rebecca Krauss, *The Theory of Prosecutorial Discretion in Federal Law: Origins and Developments*, 6 Seton Hall Circuit Rev. 1 (2009).........................................................................................11, 12

Madeline J. Wilken & Nicholas Triffin, 1 *Drafting History of the Federal Rules of Criminal Procedure* (1991).....................................21

# INTRODUCTION

Federal Rule of Criminal Procedure 48(a) permits prosecutors to "dismiss an indictment, information, or complaint" "with leave of court." The question in this case is whether that rule gives federal prosecutors a *de facto* pardon power, largely or completely unreviewable, over federal convictions that are final and unappealable.

It does not.

The parties—Appellant Aaron J. Thorpe and the Government—seek to use Rule 48(a) to vacate Thorpe's convictions to jerry-rig a sentence reduction that the Government believes he should receive. But every court to have addressed Rule 48(a)'s applicability after a defendant has been convicted and exhausted his direct appeals has held or suggested it does not apply. The text allows dismissals of indictments—not convictions—and its history shows it merely codified common-law principles of prosecutorial discretion, which have never allowed post-appeal dismissals of final convictions. This Court should not radically expand Rule 48(a) to apply to every settled conviction in our judiciary, thereby posing serious constitutional problems, particularly when other mechanisms are deliberately designed for postconviction relief. The District Court did not abuse its discretion in joining a long line of courts to hold that the Rule is inapplicable at this late juncture.

The parties also contend that prosecutorial discretion essentially required the District Court to grant the Rule 48(a) motion because it was unopposed and made in good faith. But because prosecutorial discretion does not apply in these circumstances, the District Court's discretion was not cabined by it. Rule 48(a)'s plain text gives courts discretion to deny dismissals—that is why parties need "leave of court" to dismiss charges—and its history reflects a desire to give courts independent authority to deny dismissals when against the public interest. Unconstrained by any constitutional concerns that may exist in other cases, the Court acted within its discretion in concluding it was against the public interest to release Thorpe, a dangerous recidivist.

This Court should affirm.

## STATUTES AND REGULATIONS

All pertinent statutes and regulations are included in the addendum to Thorpe's brief.

## ISSUES PRESENTED

1.      Whether the District Court abused its discretion by declining to use Federal Rule of Criminal Procedure 48(a), which allows the Government to "dismiss an indictment, information, or complaint," to vacate convictions long after the convictions were final and unappealable.

2.      Whether the District Court abused its discretion in holding that it was against the public interest to vacate the long-settled convictions of a dangerous individual and thereby release him.

## STATEMENT OF THE CASE

### A.      Thorpe's violent crime and convictions.

"Shortly after midnight on January 28, 2013, Tamika Yourse heard gunfire outside her Washington, D.C., home." *Knight I*, 824 F.3d at 1108.  Yourse looked out of her back window to see two masked, armed men disguised as police officers, attacking and kidnapping her neighbor Edmund Peters and a woman named Luttitia Fortune.  J.A. 82-86, *Knight I*, Nos. 14-3010, 14-3016 (D.C. Cir. Aug. 28, 2015).  The figures struck Peters twice with a gun across the face, pulled Fortune's hood over her head, and dragged them both into Peters' apartment.  *Id.* at 82-86, 95.  Yourse called the police.  *Knight I*, 824 F.3d at 1108.

Before the police arrived, the kidnappers—Thorpe and his associate Melvin Knight—tied up Peters and Fortune, forced them face-down on their stomachs, duct-taped their mouths shut and ankles together, put a pillow case on Peters' head, and beat his face badly while looking for his money and drugs.  J.A., *Knight I*, at 96-99, 119-124.  Peters' face bled severely; when he said he couldn't breathe, the kidnappers responded that "he was going to die tonight and they wasn't leaving no witnesses." *Id.* at 98, 123-124.  They repeatedly put a gun to the back of Peters'

3

head. *Id.* at 128. When the police arrived, Thorpe and Knight forced Fortune to crawl on her knees up the stairs, then "untied the victims, concocted a story of friendly sparring, and told the victims to play along." *Id.* at 100; *Knight II*, 981 F.3d at 1111 (Katsas, J., dissenting). "The police were not fooled," and Thorpe and Knight were arrested and charged in D.C. Superior Court with armed kidnapping and other D.C. Code offenses. *Id.*; *see also Knight I*, 824 F.3d at 1108.

Prosecutors offered Thorpe and Knight what is known as a "wired" plea deal—if both Knight and Thorpe agreed, the government would charge them both with only a single count of assault with a dangerous weapon. *Knight I*, 824 F.3d at 1108. That deal would have likely resulted in a sentence of between two-to-six years' imprisonment. *Knight II*, 981 F.3d at 1099. Thorpe accepted the plea deal, but Knight did not and the plea offer was withdrawn. *Knight I*, 824 F.3d at 1108. Prosecutors subsequently dropped the Superior Court charges and obtained a federal grand jury indictment against Thorpe and Knight charging them with several felonies. *Id.* Thorpe and Knight were found guilty of all counts after a jury trial. *Id.* Thorpe was sentenced to 25 years' imprisonment. *Id.* at 1109. Knight was sentenced to 22. *Id.*

**B.     *Knight I* and *Knight II*.**

Thorpe and Knight appealed and this Court rejected nearly all of their contentions. *See Knight I*, 824 F.3d 1105. It found that Thorpe's sentence was

substantively reasonable. *Id.* at 1111. It noted the severity of Thorpe's criminal conduct, his extensive record including other violent felonies, his low chance of rehabilitation, and the need to protect the public and for deterrence. *Id.* This Court remanded on one issue: whether Thorpe and Knight had been denied effective assistance of counsel for inadequate representation with respect to the plea deal. *Id.* at 1112.

On a second appeal, this Court agreed with the District Court that Thorpe had a competent lawyer who thoroughly advised him regarding the plea deal and worked hard to unwire it. *Knight II*, 981 F.3d at 1107. The Court reversed on Knight's Sixth Amendment claim, however, because Knight's attorney failed to adequately inform him of the consequences of taking or rejecting the plea deal and there was a reasonable probability Knight would have otherwise accepted the offer. *Id.* at 1106-07. The Court allowed Knight to take the initial offer as a remedy. *Id.* at 1107.

Thorpe could not. As this Court explained, Thorpe's "Sixth Amendment rights were not violated," and it could find no "precedent granting relief to one defendant because a co-defendant received the ineffective assistance of counsel." *Id.* at 1108-09. In dicta, this Court offered a possible solution that no party had briefed or discussed: the Government had the "discretion to ameliorate any injustice" resulting from Thorpe's inability to take the plea deal because, "even

now," the Government could "seek dismissal of some or all of the charges against Thorpe under Rule 48(a) of the Federal Rules of Criminal Procedure." *Id.* at 1109. This Court issued its mandate on January 28, 2021, and Thorpe did not seek Supreme Court review.

### C. The Government brings a Rule 48(a) motion a year after the *Knight II* mandate issues, and the District Court denies it.

Only over a year later, on March 17, 2022, the Government moved under Federal Rule of Criminal Procedure Rule 48(a) to dismiss Thorpe's "indictments" and thereby leave him "with a single conviction"—the D.C. Code charge of assault with a dangerous weapon that had been offered in the unconsummated wired plea. App. 42. The Government reasoned that Thorpe could not take the plea deal due to Knight's ineffective counsel and a sentencing disparity had emerged. *See* App. 46 (citing 18 U.S.C. § 3553(a)(6)). Thorpe consented to the motion. App. 50. Given Thorpe's time served already, the motion would result in Thorpe's immediate release. App. 47 n.5.

The District Court denied the motion. As the court explained, the question was whether Rule 48(a) could be used "after a jury has convicted, a court has sentenced, and an appellate court has blessed a defendant's conviction and sentence." App. 79 (emphasis omitted). The court found it could not "under the facts and law presented by this case." *Id.* The District Court analogized the motion to a request for a sentencing reduction. App. 86. The Court noted it had

discretion under this Court's precedent to ensure "that the agreement adequately protects the public interest." *Id.* (citing *United States v. Ammidown*, 497 F.2d 615, 620, 622 (D.C. Cir. 1973)). The District Court held that the Government's request failed under this framework. It had failed to address the severity of Thorpe's conduct, his extensive criminal history, and if any disparities between Thorpe and Knight might be warranted. App. 90-92. The District Court also noted that the Judiciary has primary authority over sentencing, and that "the discretion of the Executive is at its height" only "when criminal charges are pending." App. 87-91.[1]

Thorpe appealed. App. 95. Because both parties argue the District Court erred, the Court appointed Keenan Roarty of Hogan Lovells US LLP as *amicus curiae* in support of the District Court's order.

## SUMMARY OF ARGUMENT

**I.** Rule 48(a) did not allow the Government to vacate Thorpe's convictions long after he had finished any direct appeals. It allows prosecutors to dismiss an "indictment, information, or complaint" and "prosecution," but here there were only final, unappealable convictions and no pending prosecution. The

---

[1] Thorpe also sought post-conviction relief under 28 U.S.C. § 2255, alleging that his inability to take the plea deal violated his due process rights. The District Court denied post-conviction relief, and this Court denied Thorpe a certificate of appealability. App. 83-85; *United States v. Thorpe*, No. 23-3055 (D.C. Cir. Dec. 7, 2023).

Rule's history shows it mostly codified prosecutorial discretion, discretion which has never allowed prosecutors the ability to wipe out convictions long after they've been finalized and upheld. *Every* court to address Rule 48(a)'s applicability after appeals end agrees that it does not apply. Reversal would pose troubling constitutional problems, too, because it would grant federal prosecutors the power to unilaterally undo all convictions and sentences, usurping the Judiciary's primary authority over sentencing and the President personal power to pardon. And the availability of other means to vacate convictions and reduce sentences counsels against an atextual, ahistorical interpretation of Rule 48(a) that the parties ask this Court to be the first to adopt.

II. Even if Rule 48(a) applied, its plain text and history give courts broad authority to deny dismissals of indictments when against the public interest. The parties mostly argue that the District Court's discretion was limited by prosecutorial discretion. Because that doctrine is inapplicable, nearly all of their cases are beside the point. The District Court was not obligated to release a dangerous criminal serving a substantively reasonable sentence.

## STANDARD OF REVIEW

This Court reviews the denial of a Rule 48(a) motion for abuse of discretion. *Rinaldi v. United States*, 434 U.S. 22, 29 & n.15, 32 (1977).

# ARGUMENT

## I. Rule 48(a) does not allow the Government to vacate convictions after appellate proceedings have finished.

Rule 48(a) does not allow vacatur of convictions after appellate proceedings have ended, and the District Court therefore did not abuse its discretion in denying the motion.

Start with the text. *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1647 (2024). Under Rule 48(a), "[t]he government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a). The Rule speaks of dismissing an "indictment," "information," or "complaint"— not a final "conviction." *See Rice v. Rivera*, 617 F.3d 802, 809-810 (4th Cir. 2010) (noting the incongruity). Although the Government's motion nominally seeks to dismiss Thorpe's indictments, the reality is that it admits to actually "leave defendant Thorpe with a single conviction for the D.C. Code offense of assault with a dangerous weapon." App. 42.

Rule 48(a)'s first sentence also equates the dismissal of an "indictment, information, or complaint" with, in the next sentence, a dismissal of "the prosecution," thereby presuming there is an active prosecution to dismiss. Rule 48(a)'s original text made this even clearer. It allowed that "[t]he Attorney General or the United States attorney may by leave of court file a dismissal of an

9

indictment, information or complaint *and the prosecution shall thereupon terminate*." Fed. R. Crim. P. 48(a) (1944) (emphasis added). And the 2002 Amendments resulting in the current text were "stylistic only" and did not affect the Rule's substance. Fed. R. Crim. P. 48(a) advisory committee's notes to 2002 amendments; *see Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) ("[T]he pre-revision language remains relevant.").

Rule 48(a)'s text thus "clearly contemplates action by the prosecuting agency only while control of the prosecution still lies, at least in part, with it." *Korematsu v. United States*, 584 F. Supp. 1406, 1411 (N.D. Cal. 1984). "By contrast, the prosecutor has no authority to . . . invoke Rule 48(a) after a person has been subject to conviction, final judgment, imposition of sentence and exhaustion of all appeals and, indeed, after a lapse of many years. At that stage, there is no longer any prosecution to be terminated." *Id.*

Rule 48(a)'s history points in the same direction. Rule 48(a) codified (and somewhat restricted, *see infra* pp. 21-25) prosecutorial discretion. But prosecutorial discretion allows the Government to dismiss pending prosecutions, not final convictions. "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480

(D.C. Cir. 1967). This reluctance of the Judiciary, however, is in meddling with choices to *bring charges* or to *dismiss proceedings*; here, there is no proceeding left. In other words, while "decisions to dismiss *pending* criminal charges . . . lie squarely within the ken of prosecutorial discretion," *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (emphasis added), the Judiciary has never deferred to a federal prosecutor's assertion of power to simply undo a long-settled conviction.

That has been true since the Founding. At common law, prosecutors had the power to enter a *nolle prosequi* to dismiss charges. *See Ammidown*, 497 F.2d at 620. But "[a]s the literal translation of *nolle prosequi*—'I am unwilling to prosecute'—makes clear, the primary purpose of the doctrine was to allow the government to cease *active* prosecution." *Korematsu*, 584 F. Supp. at 1410 (emphasis added). That principle stretches back throughout history. "In England, the *nolle prosequi* was a procedural device that the royally appointed Attorney General could use to terminate an *ongoing* criminal prosecution." Rebecca Krauss, *The Theory of Prosecutorial Discretion in Federal Law: Origins and Developments*, 6 Seton Hall Circuit Rev. 1, 16 (2009) (emphasis added). In America, *nolle prosequi* eventually coalesced into a prosecutor's powers over three distinct stages of proceedings, all of which ended before a final judgment. First, a prosecutor could "enter a *nolle prosequi* at any time before the jury [was]

11

empanelled for the trial of the case." *The Confiscation Cases*, 74 U.S. 454, 457 (1868). Second, a prosecutor could seek a *nolle prosequi* during trial, but a defendant could object to its entry. *Korematsu*, 584 F. Supp. at 1411. Third, the power to enter a *nolle prosequi* "revived just after the verdict was returned," but was "again extinguished" when "a sentence had been handed down or final judgment entered." *Id.* Exercised in this way, as John Marshall explained, *nolle prosequi* dealt "no interference with judicial decisions." *See* Krauss, *supra*, at 18. *Nolle prosequi* was not used to undo long-settled convictions.

Federal Rule of Criminal Procedure 48(a) codified and restricted *nolle prosequi*. Fed. R. Crim. P. 48(a) advisory committee's notes to 1944 adoption. Whereas the common law allowed prosecutors to enter a *nolle prosequi* "in his discretion, without any action by the court," Rule 48(a) permitted "the filling of a *nolle prosequi* only by leave of court." *Id.* But Rule 48(a) did not change the common-law principle that the power to enter a *nolle prosequi* ends when a defendant's conviction is final.

Against this backdrop, it is unsurprising that every court we are aware of that has squarely addressed the question, including this Court, has held or suggested that Rule 48(a) does not apply after appeals are complete. *See United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006); *Korematsu*, 584 F. Supp. at 1410-11; *Hirabayashi v. United States*, 828 F.2d 591, 607-608 (9th Cir. 1987);

*United States v. Burdeau*, 168 F.3d 352, 359 (9th Cir. 1999); *Rivera*, 617 F.3d at 809-810; *see also State v. Villar*, 180 A.3d 588, 593 (Vt. 2017) (interpreting identical state law provision and relying heavily on Rule 48(a) federal law).  The leading treatise agrees, too, explaining that the Rule applies "after conviction and sentencing *while the case is on direct appeal*."  3B Wright & Miller, Fed. Prac. & Proc. Crim. § 802 (4th ed. June 2024 update) (emphasis added).

This Court has strongly indicated that Rule 48(a) does not apply post-appeal.  In *Smith*, this Court noted that "the text of [Rule 48(a)] and its roots in the common law doctrine of nolle prosequi cast doubt on Rule 48's applicability post-*conviction*," not merely post-appeal.  467 F.3d at 789 (emphasis added).  The Court pointed out that while "the Supreme Court has twice permitted post-conviction use of the rule while direct appeal was pending, it has not explained the scope or implications of those decisions."  *Id.* (citing *Rinaldi*, 434 U.S. 22 and *Watts v. United States*, 422 U.S. 1032 (1975)).  If it is doubtful that Rule 48(a) applies post-conviction, then it is certainly incorrect that Rule 48(a) applies post-*appeal*.

As one district court explained, there is "no authority for the proposition that a Rule 48(a) motion may be made long after the prosecution has come to rest, the judgment is final, appeals have been exhausted, judgment imposed and the sentence served."  *Korematsu*, 584 F. Supp. at 1411.  Rule 48(a)'s "plain language" presumes an active prosecution, and "nothing . . . suggest[s] that the

Rule was intended to extend the *nolle prosequi* privilege beyond that allowed at common law." *Id.* at 1410-11. The court therefore refused to use Rule 48(a) to vacate the 40-year-old convictions of no-less-worthy a defendant than Fred Korematsu. *Id.*

The Ninth Circuit relied on that same reasoning in concluding that a district court does not abuse its discretion when it refuses to "apply[] Rule 48 to vacate a conviction after the trial and appellate proceedings have ended." *Hirabayashi*, 828 F.2d at 607-608. It extensively quoted *Korematu*'s reasoning and distinguished cases that applied Rule 48(a) during a live direct appeal. *Id.* And although the Ninth Circuit did not ultimately decide whether a district court could "*ever*" grant a "post-appeal dismissal," it held that there was no abuse of discretion in declining to do so. *Id.* at 608 (emphasis added). The Ninth Circuit later explicitly held that Rule 48(a) grants the Government power to dismiss only "as long as the defendant's appeal is pending and the decision is therefore not final." *Burdeau*, 168 F.3d at 359.

Other courts have taken the same view. The Vermont Supreme Court relied on *Korematsu* to hold that Vermont's virtually identical Rule 48(a) analogue applies only "through the exhaustion of all appeals." *Villar*, 180 A.3d at 593 (quotation marks omitted). "Because the government continues as a party to a criminal case during the appeals process, it logically continues its 'prosecution'

until all appeals are exhausted." *Id.* at 590. In another case, the Fourth Circuit noted in dicta that Rule 48(a)'s text—which "speaks only of the dismissal of an 'indictment, information or complaint'"—suggests that the rule may be inapplicable after a "conviction and unsuccessful direct appeal." *Rivera*, 617 F.3d at 809-810.

The Government and Thorpe's contrary cases are unavailing. *See* Thorpe Opening Br. 35-36; Gov't Opening Br. 32-33. First, those cases apply Rule 48(a) to convictions on direct appeal. *See generally id.* Second, Thorpe incorrectly describes *Rinaldi* as a "post-appeal" case. But that simply is not so. In *Rinaldi*, the Government asked the Fifth Circuit, on direct appeal, for a remand to make a Rule 48(a) motion; the Fifth Circuit then granted the remand. *Rinaldi*, 434 U.S. at 24-25. *Rinaldi* said nothing about *post-appeal* motions, as multiple cases have recognized in distinguishing *Rinaldi*. *See Smith*, 467 F.3d at 789; *Hirabayashi*, 828 F.2d at 607. Third, the Government cites *Rivera* as applying Rule 48(a) post-appeal, but *Rivera* did not decide whether Rule 48(a) actually applied because the issue was forfeited. *Rivera*, 617 F.3d at 811. The Government's only remaining authority—a two-sentence Supreme Court order with no reasoning—occurred while the case was on petition for certiorari to the Supreme Court and thus direct-appeal proceedings were still ongoing. *Bronsozian v. United States*, No. 19-6220, 2020 WL 1906543, at *1 (U.S. Apr. 20, 2020). No case supports Thorpe's and the

Government's position that Rule 48(a) allows the prosecution to vacate a conviction once appeals are complete.

The District Court was not obligated to accept the parties' construction of Rule 48(a) simply because they agreed to it. To be sure, a Rule 48(a) motion being brought post-appeal is a nonjurisdictional defect that a court is not *required* to raise *sua sponte*. *See Smith*, 467 F.3d at 787-789; *Rivera*, 617 F.3d at 808-809. But once the District Court was asked to grant the parties' motion, "the court [was] not limited to the particular legal theories advanced by the parties, but rather retain[ed] the independent power to identify and apply the proper construction of governing law." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 440 (1993) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *see Young v. United States*, 315 U.S. 257, 259 (1942) ("[O]ur judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties."); *Arcadia, Ohio v. Ohio Power Co.*, 498 U.S. 73, 77 (1990) (addressing an "antecedent" and "dispositive" legal question not addressed by the parties).

The District Court would be limited in raising the post-appeal timing of the Government's Rule 48(a) motion *sua sponte* if the defect were similar to a statute of limitations or other affirmative defense. *See, e.g., Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1107-15 (D.C. Cir. 2019). But the Government filing a Rule 48(a) motion post-appeal is not the Government bringing the motion too late; it is

the Government filing a Rule 48(a) motion to seek relief—vacatur of a final judgment of conviction—that the Rule does not allow courts to grant. The "correct interpretation of [Rule 48(a)] . . . is not an affirmative defense." *Thompson v. Runnels*, 705 F.3d 1089, 1099 (9th Cir. 2013). Courts do not "accept an interpretation of a [rule] simply because it is agreed to by the parties." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 56 (2006). And even if the applicability of a post-appeal Rule 48(a) motion were similar to a statute of limitations defense, this Court *still* allows district courts to raise nonjurisdictional forfeited defenses when the defenses "implicate the institutional interests of the judiciary." *Maalouf*, 923 F.3d at 1100. As the District Court explained, allowing post-appeal Rule 48(a) motions to obtain sentencing reductions with effectively no judicial control would intrude too heavily on the Judiciary's traditional power over sentencing, an "exclusive province of the judge." *Ammidown*, 497 F.2d at 619; App. 86-88. The District Court was not forbidden from interpreting Rule 48(a) for itself.

Moving on, allowing Rule 48(a) dismissals after all appeals are complete poses serious separation-of-powers problems. As explained above, although "decisions to dismiss *pending* criminal charges . . . lie squarely within the ken of prosecutorial discretion," *Fokker Servs*., 818 F.3d at 742 (emphasis added), "it is axiomatic that, within the limits imposed by the legislature, imposition of sentence is a matter for discretion of the trial judge." *Ammidown*, 497 F.2d at 621. At

sentencing, prosecutors have no "role beyond the advisory." *Id.* As the District Court observed, permitting the prosecution to "reverse-engineer[] the charges . . . to arrive at the Government's preferred sentencing outcome" *after* a court's sentence has been upheld on appeal intrudes on the Judiciary's primary power to sentence on the charges that a defendant has been found guilty of. App. 86.

Allowing the Government to use Rule 48(a) to unilaterally vacate convictions after appeal would also be in tension with the Constitution's allocation of the pardon and commutation powers to the President alone. Under the Constitution, the President—and only the President—may unilaterally commute Thorpe's sentence or pardon him of all convictions other than the D.C. Code offense he would have pled to under the wired plea deal. *See* U.S. Const., art. II, § 2, cl. 1. But by reserving the commutation and pardon powers to the President alone, the Framers ensured that the President personally is accountable for the powers' use. Allowing individual U.S. Attorneys to have the same power under Rule 48(a) subverts this constitutional framework.

None of this means the Court was necessarily wrong when it suggested in *Knight II* that "even now, the prosecution [could] seek dismissal of some or all of the charges against Thorpe under Rule 48(a)." *Knight II*, 981 F.3d at 1109. "An appellate court's decision is not final until its mandate issues," *Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004) (citing *Mary Ann Pensiero, Inc. v.*

*Lingle*, 847 F.2d 90, 97 (3d Cir. 1988)), and Rule 48(a) may allow the dismissal of charges "as long as the defendant's appeal is pending and the decision . . . therefore not final." *Burdeau*, 168 F.3d at 359. The Government therefore could have potentially dismissed Thorpe's charges before the Court's mandate issued in *Knight II. See id.*[2] But the Government did not, nor did it seek to stay the mandate to allow it to consider doing so. It instead waited until over a year after the mandate issued, far after Thorpe's convictions became final and unappealable.

Finally, when defendants believe that they have been unlawfully or inequitably convicted or sentenced, other mechanisms—not Rule 48(a)—provide relief. First, individuals may seek post-conviction relief under 28 U.S.C. § 2255, as Thorpe attempted to do here. Second, courts may vacate judgments and grant a new trial under Federal Rule of Criminal Procedure 33(a) "if the interest of justice so requires," and Rule 33(b)'s rigid filing deadlines can be waived by the parties, *Eberhart v. United States*, 546 U.S. 12, 15-16 (2005). Third, defendants may, in rare circumstances, seek a writ of *coram nobis* to vacate criminal convictions when other means are unavailable. *See Korematsu*, 584 F. Supp. at 1411-19 (granting a

---

[2] In this Circuit, claims for ineffective assistance of counsel are brought on direct appeal, and the Court often—as it did in this case—remands for development of those claims when necessary, rather than directing they be brought under 28 U.S.C. § 2255. *See Knight I*, 824 F.3d at 1112. *Knight II* was therefore a continuation of Thorpe's direct-appeal proceedings from his conviction.

writ of *coram nobis* where Rule 48(a) was unavailable); *Hirabayashi*, 828 F.2d at 604-607 (same). Fourth, defendants or the Bureau of Prisons may move for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) for an "extraordinary and compelling reason." One or more—or none—of these paths may be an option for Thorpe. But the point is that that these are the mechanisms whereby Thorpe and the Government seek relief for what they view as an unjust sentence without relying on an atextual, ahistorical interpretation of Rule 48(a). The District Court did not abuse its discretion in denying the Government's Rule 48(a) motion "after a jury has convicted, a court has sentenced, and an appellate court has blessed a defendant's conviction and sentence." App. 79 (emphasis omitted).

## II. The District Court did not abuse its discretion in concluding that releasing a dangerous individual was against the public interest.

Even if Rule 48(a) relief were possible on these facts, the District Court acted well within its discretion in declining to use Rule 48(a) to shorten—by more than half—a dangerous criminal's substantively reasonable sentence.

The Government may dismiss indictments under Rule 48(a) only "with leave of court." Fed. R. Crim. P. 48(a). The Rule's plain text and history gives courts "obvious" discretion to deny the motion, *Rinaldi*, 434 U.S. at 29 n.15, including when dismissal would be against the public interest. *Ammidown*, 497 F.2d at 622. The District Court's discretion was not limited by separation-of-powers concerns because federal prosecutors have no inherent authority to vacate settled, final

convictions.  The District Court was therefore not obligated to release a defendant with an extensive criminal record who had been tried, convicted, and reasonably sentenced for his role in a violent crime.

### A. Rule 48(a)'s plain text and history gives courts broad discretion to decline to dismiss indictments when against the public interest.

Under Rule 48(a), the Government must obtain "leave of court" to dismiss an indictment.  This phrase "obviously vest[s] some" discretion in the district courts, *Rinaldi*, 434 U.S. at 29 n.15, and the plain text "would seem clearly directed toward an independent judicial assessment of the public interest in dismissing the indictment," *id.* at 34 (Rehnquist, J., dissenting).

The Rule's history confirms it meant to give courts independent authority to deny dismissals.  The Advisory Committee's first draft of the rule, submitted to the Supreme Court, gave prosecutors the unchecked power to dismiss indictments after providing a statement of reasons why.  *United States v. Cowan*, 524 F.2d 504, 510 (5th Cir. 1975).  In its comments back to the Advisory Committee, the Supreme Court thought that that did not give courts enough independent authority:

> This rule apparently gives the Attorney General or the United States Attorney unqualified authority to *nolle pros* a case without consent of the court.  Is this now the law, and in any event *should* it be the law, any more than that the Government can confess error in a criminal case without the consent of the court?  See *Young v. United States*, decided this term.

Madeline J. Wilken & Nicholas Triffin, 1 *Drafting History of the Federal Rules of Criminal Procedure* 7 (1991) (emphasis added).

The citation to *Young v. United States* shows that the Supreme Court sought to give courts authority to independently decide the appropriateness of dismissals, notwithstanding the Government's views. In *Young*, the Government confessed error in a criminal case, such that it now agreed that the defendant's anti-narcotics conviction was unlawful and should be vacated. 315 U.S. 257, 258-259 (1942). The Government's belief was "entitled to great weight," but, crucially, not determinative: "our judicial obligations compel us to examine independently the errors confessed." *Id.* That was because "the public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers." *Id.* at 259. In other words, courts also had a role in protecting the public interest, not simply the Executive. After the Advisory Committee again failed to meaningfully change the rule, the Supreme Court itself later inserted the "leave of court" requirement. *Cowan*, 524 F.2d at 510-511.

The Rule adopted "the rule [then] prevailing in many states," which gave courts significant power to deny dismissals. Fed. R. Crim. P. 48(a) advisory committee's notes to 1944 adoption. Most States had "modified the common law to give courts a responsible role in the dismissal of a pending criminal proceeding by requiring an 'order' or 'leave' or 'consent' of court." *Cowan*, 524 F.2d at 509-510. This case law, although "sparse," had "consistently affirm[ed] the power and

duty of the court to exercise discretion to grant or withhold leave to dismiss pending criminal prosecutions in 'the public interest.'" *Id.* at 510. The then-current American Law Institute Model of Criminal Procedure "codified the state statutory law, clearly articulating a judicial discretion of significant scope," allowing that a court "on the application of the prosecuting attorney or on its own motion *may in its discretion for good cause* order that a prosecution by indictment or information be dismissed." *Id.* (emphasis added).

The Rule's text and history therefore make it "manifest that the Supreme Court intended to make a significant change in the common law rule by vesting in the courts the power and the duty to exercise a discretion for the protection of the public interest." *Id.* at 511. That public interest is broader than defendants' interests. Although many courts (and the parties) have stated that Rule 48(a)'s principal aim is to protect defendants against "prosecutorial harassment" like "charging, dismissing, and recharging,"[3] the plain text and "history of the Rule belies the notion that its only scope and purpose is the protection of the defendant." *Cowan*, 524 F.2d at 512. Instead, "in the context of the Court's contemporaneous

---

[3] *E.g.*, *Rinaldi*, 434 U.S. at 29 n.15 (stating, without analysis, that this was "apparently" Rule 48(a)'s principal aim). *Rinaldi* cited *Woodring v. United States*, 311 F.2d 417, 424 (8th Cir. 1963) and another case that itself cited *Woodring*. *Woodring* simply asserted that protecting defendants against prosecutorial harassment was the Rule's sole purpose without any citation or explanation, and it appears to be the origin of the misconception.

*Young* decision and the state modifications of the common law," it is "clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice." *Id.*

Thus, as this Court has already explained, Rule 48(a) "gives the court a role in dismissals following indictment," including in deciding "whether [dismissal] sufficiently protects the public." *Ammidown*, 497 F.2d at 620. A court cannot "be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest," but must "require a statement of reasons and underlying factual basis," and be "satisfied that the reasons advanced for the proposed dismissal are substantial." *Id.* Rule 48(a) does not "intend[] the trial court to serve merely as a rubber stamp for the prosecutor's decision"; "the judge should be satisfied that the agreement adequately protects the public interest." *Id.* at 622 (quotation marks omitted). Although the Government and Thorpe call *Ammidown*'s analysis dicta, Gov't Opening Br. 23, Thorpe Opening Br. 34, its reasoning falls easily within what the Rule's plain text and history intended courts to do.

*Rinaldi*, too, embraced a broad view that the public interest standard means courts independently assess the appropriateness of a dismissal. There, the Government sought to dismiss a conviction because it had been obtained in violation of federal policy not to try individuals already convicted in state court for the same crime. 434 U.S. at 23-27. The district court denied the motion and the

Fifth Circuit affirmed. *Id.* at 25-26. In reversing, the Court assumed (but did not hold) that the public interest standard applied. *Id.* at 29 n.15. The Court then "agree[d]" with the Government that dismissal was not against the public interest: "[n]o action by the [Government] or the Court can now replace the waste of judicial and prosecutorial resources expended in obtaining petitioner's conviction . . . [and] no societal interest would be vindicated by punishing further a defendant who has already been convicted and has received a substantial sentence in state court." *Id.* at 31 (quotation marks omitted). In other words, the Court did not end the case just because the Government acted in good faith and the defendant had consented; it independently analyzed whether dismissal was in the public interest. Justice Rehnquist agreed that Rule 48(a) is "clearly directed toward an independent judicial assessment of the public interest," but believed that the Government had "manipulate[d] the use of judicial time and resources through its capricious, inconsistent application of its own policy." *Id.* at 34 (Rehnquist, J., dissenting). The point is this: Although *Rinaldi* did not formally adopt the public-interest standard, once the Court assumed it applied, every justice believed it required a broad look of what was in the public interest.

Separation of powers did not limit the District Court's discretion here. As the Government (at 20-36) and Thorpe (at 19-29) point out, many courts hold that prosecutorial discretion significantly cabins a district court's discretion to deny

dismissal of pending prosecutions. *See, e.g.*, *Fokker Servs.*, 818 F.3d at 742 (district courts cannot deny Rule 48(a) motion "because of a view that the defendant should stand trial" or that "remaining charges fail adequately to redress the gravity of the defendant's alleged conduct"). But federal prosecutors do not have any special authority to dismiss convictions *after* appellate proceedings have concluded. *See supra* pp. 10-12.

With one exception, every single one of the parties' Rule 48(a) cases involves pending prosecutions. *But see Rivera*, 617 F.3d at 811-812. That distinction makes these cases inapposite because their rationale—avoiding judicial interference with prosecutors' charging decisions—is completely absent. *See Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 357 (2024) (refusing to extend cases whose "reasoning is [in]applicable"). Although the Government cites cases holding that the same standard applies "regardless of the stage of prosecution," this case was not at *any* stage of the prosecution when the Government filed its Rule 48(a) motion. Gov't Opening Br. 33-34 (citation omitted).

*Rivera* from the Fourth Circuit is the only contrary case and is mistaken. 617 F.3d 802. After finding that the parties had waived any objections to the appropriateness of a post-appeal Rule 48(a) motion, the Court then applied the same standards post-appeal as are applicable during an ongoing prosecution. *Id.* at 811-812. It reasoned that "the Separation of Powers Doctrine" gives a trial court

"little discretion in considering a government motion to dismiss," held that a good-faith Rule 48(a) motion "must be granted," and cited cases involving pending prosecutions. *Id.* (citing *United States v. Smith*, 55 F.3d 157, 158-159 (4th Cir. 1995) and *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983)). *Rivera*'s reflexive application of the same standards applicable to cases when prosecutorial discretion exists has no persuasive value for this Court, particularly because the Fourth Circuit did not have before it adversarial presentation on the Rule 48(a) issue. The Government only revealed it was using Rule 48(a) as the basis for its proposed dismissal at *Rivera*'s oral argument, and while the Government reversed positions on some issues in the case, it never "reneged on or sought to withdraw its Motion to Vacate." *Rivera*, 617 F.3d at 806, 808. Under Rule 48(a)'s plain text and history, as well as the relevant Supreme Court precedent, where prosecutorial discretion does not exist, the District Court had broad authority to independently determine if a dismissal was against the public interest.

## B. The District Court did not abuse its discretion in declining to release Thorpe, a dangerous recidivist.

The District Court acted well within its discretion in refusing to release Thorpe, a dangerous recidivist. Thorpe was convicted of a horrific, violent crime, has a violent past, and has shown no indication that he has changed his ways.

Although the Government now brushes over the severity of Thorpe's criminal conduct and history, it took a very different view at sentencing:

The fact that the defendant violently participated in this home invasion and kidnapped two innocent citizens and beat and threatened to kill the victims and possessed a loaded handgun while committing these crimes cannot be over-stated. The harm and violent nature of and the numerous criminal acts clearly demonstrated a wonton and reckless disregard for the victim's safety and the community. Simply stated, the blatant criminal nature of defendant Thorpe's actions are chilling to imagine. Consequently, the public should be protected from the defendant by this Court giving the defendant the maximum term of incarceration with consecutive sentences on each charge and consecutive with respect to each victim.

\* \* \*

The nature and circumstances of the offense strongly favor the imposition of a maximum term of imprisonment for the defendant. Simply put, the defendant committed brutal and calculated crimes on the victims. . . . Defendant Thorpe caused incalculable harm to the victims but also to society. The history and circumstances of the defendant also favor maximum jail time and that he would obstruct justice by threatening the victims to lie to the police when they were released shows he has no regard for the criminal justice system. Consequently, the defendant has forfeited his right to live in a free [] society.

Government's Mem. in Aid of Sentencing at 3-4, *United States v. Thorpe*, No. 13-131-01 (RJL) (D.D.C. Oct. 24, 2013) (ECF No. 62). The Government also emphasized Thorpe's extensive criminal record, which included several drug convictions and a juvenile conviction for assault with intent to kill. *Id.*

Although the Government and Thorpe now argue that the sentencing disparity between Knight and Thorpe justifies release, "even if there were some degree of sentencing disparity, that is only one factor among many that district courts must balance." *United States v. Alford*, 89 F.4th 943, 954 (D.C. Cir. 2024). Every single other sentencing factor points against release, and as the District

28

Court noted, the Government has not repudiated any of the statements it made at sentencing. App. 92. Under these facts, the District Court was not obligated to release Thorpe early.

Nor would any sentencing disparity be per se unreasonable. Sentencing disparities raise concerns when they involve "defendants with similar records." 18 U.S.C. § 3553(a)(6); *see United States v. Colwell*, 304 F. App'x 885, 886 (D.C. Cir. 2008). These defendants do not. As this Court has already explained, Thorpe has a "more significant criminal history" than Knight, which this Court pointed to in upholding the sentencing disparity that already existed. *Knight I*, 824 F.3d at 1111; *see* Government's Mem. in Aid of Sentencing at 3, *Thorpe*, No. 13-131-01 (Thorpe's convictions); Government's Mem. in Aid of Sentencing at 3, *United States v. Knight*, No. 13-131-02 (RJL) (D.D.C. Oct. 24, 2013) (ECF No. 63) (Knight's single drug conviction). Although the disparity is now larger, that does not mean it now became unreasonable.

The parties argue that the District Court should not have relied on any 18 U.S.C. § 3553 factors because courts do not traditionally apply them in Rule 48(a) motions. Thorpe Opening Br. 37; Government Opening Br. 34. But the § 3553 analysis was invited by the parties. In its Rule 48(a) motion, the Government argued that the motion should be granted because "Thorpe is serving a 300-month aggregate sentence, which is a disproportionately longer sentence than his co-

defendant," and cited § 3553(a)(6) as support. App. 46. Thorpe also argued the motion would "ameliorate" the "disparate outcomes" between Thorpe and Knight. App. 54. The parties cannot invoke § 3553 in their motion and then complain that the District Court relied on § 3553 in denying dismissal. *See United States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018) (parties cannot complain on appeal of error they invited below).

But the District Court did not err in considering those factors. Although courts might not traditionally apply the § 3553 factors in this context, that is because the Government traditionally does not file Rule 48(a) motions after all appeals have concluded. In this highly unusual procedural posture, it was not an abuse of discretion for the District Court to have looked at the sentencing factors to determine whether it was in the public interest to order Thorpe be released. Indeed, if Thorpe had brought a substantively identical sentencing-reduction motion arising out of the same facts, the District Court would have been *required* to look at these factors. *See* 18 U.S.C. § 3582(c)(1)(A).

Finally, the parties' argument contradicts *Rinaldi*. In determining whether a Rule 48(a) dismissal was appropriate after a conviction but still on direct appeal, the Court remarked that "no societal interest would be vindicated by punishing further a defendant who has already been convicted and has received a substantial sentence in state court." 434 U.S. at 31 (quotation marks omitted). That is a

sentencing factor. *See* 18 § U.S.C. 3553(a)(2) ("the need for the sentence imposed"). Under *Rinaldi¸* the District Court could consider the need for the sentence.

The parties also argue that they are not just relying on the disparity, but also on the more basic unfairness that Thorpe could not take the plea he wanted. Gov't Opening Br. 35; Thorpe Opening Br. 38-39. But Thorpe had no Sixth Amendment right to an unwired plea. *Knight II*, 981 F.3d at 1108-09. His due process 28 U.S.C. § 2255 argument arising out of the same facts was rejected by the District Court and this Court. App. 83-85; *United States v. Thorpe*, No. 23-3055 (D.C. Cir. Dec. 7, 2023). Thorpe has not been legally wronged by his inability to take the plea. Nor does a plea deal reflect what a defendant "should" get—it is a reflection of negotiated trade-offs between the Government and a defendant. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Those trade-offs never happened here and the Government was forced to take Thorpe's case to trial. *Knight I*, 824 F.3d at 1108-09. Thorpe's ultimate 25-year-sentence was substantively reasonable. *Id.* at 1111. Although Thorpe's inability to take the deal was relevant, it was not determinative nor the only factor.

Finally, the District Court had every right to be concerned about the practical implications of the Government's post-appeal Rule 48(a) motion, which, if taken to its logical conclusion, would allow federal prosecutors to undo convictions and

sentences if they disagree with the sentence the court imposes.  This Court has already recognized that "protection of the sentencing authority reserved to the judge" is a part of the public-interest analysis.  *Ammidown*, 497 F.2d at 622.  The District Court did not abuse its discretion in denying the Government's Rule 48(a) motion on that basis.

## CONCLUSION

For the foregoing reasons, the District Court's order should be affirmed.

Respectfully submitted,

/s/ Keenan H. Roarty
SEAN MAROTTA
KEENAN H. ROARTY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
keenan.roarty@hoganlovells.com

September 4, 2024

*Court-appointed* Amicus Curiae

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of the Appointment Order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. Local R. 32(e)(1), this document contains 7,641 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Keenan H. Roarty
Keenan H. Roarty

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2024, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel for other parties are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Keenan H. Roarty
Keenan H. Roarty